Judgment reversed and cause remanded for trial.

HARRIET M. KRAEMER, PETITIONER-RESPONDENT, v. NITROFORM COMPANY, INC., RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 23, 1955—Decided June 15, 1955.

Before Judges GOLDMANN, FREUND and CONFORD.

*Mr. Isidor Kalisch* argued the cause for respondent-appellant.

*Mr. Alexander Avidan* argued the cause for petitioner-respondent (*Messrs. Avidan & Avidan,* attorneys).

The opinion of the court was delivered by

CONFORD, J. A. D.   This case grows out of the same factual background which gave rise to the workmen's compensation claim determined adversely in the opinion of this court in *Mahoney v. Nitroform Company, Inc.,* Docket No. A–263–54, decided June 10, 1955.   Petitioner's decedent here and the decedent in that case were two of four incorporators of the respondent corporation and were both fatally injured in an accidental explosion on February 21, 1953 on the premises occupied by the company in its business of manufacturing chemicals.   The cases were tried separately in the Division of Workmen's Compensation, the *Mahoney* case several months prior to the instant matter, and before different deputy directors.   Here, as there, the Division and the Essex County Court, 33 *N. J. Super.* 220, found the required statutory

relationship of employer and employee to exist and an award was made and affirmed. Substantially similar legal questions are presented in both cases and we refer to our discussion of the controlling authorities in the *Mahoney* opinion without repeating them here. As to the facts, however, although both cases arise from the identical background, this case is to be determined on the record here made, without any aid or detriment to the parties from the record in the other matter. While questions concerning the rate of compensation payable were argued before us, our determination rests on the conclusion that the relationship of employer-employee is not shown to have existed between the respondent and the decedent at any time. While respondent admitted employment in its answer, it was permitted to withdraw the admission at the hearing.

Some time prior to June 1952, the decedent, Edwin C. Kraemer, together with Thomas J. Tully, Leon I. Ross and Richard W. Mahoney, formed a partnership for the business of manufacturing chemicals and undertook operations at a plant in Newark. When their production attained a larger scale they organized the respondent corporation June 26, 1952, all being incorporators and dividing the shares equally. Mahoney became president, Kraemer, secretary and treasurer, Tully, vice-president in charge of research and Ross, vice-president in charge of sales. It does not appear whether there was any organization or functioning of a board of directors. At all times until the fatal explosion in 1953, each of the incorporators had a full time regular occupation elsewhere, Tully as associate professor of chemistry at Newark College of Engineering, Kraemer as custodian of the chemical stock room at that college and Mahoney as a production chemist at Merck & Co. As to Ross, there is no evidence. Kraemer's salary at the college was $4,088 annually.

It appears that substantially all production for respondent was by Mahoney and Kraemer. There were a few other persons employed. Mahoney and Kraemer spent week-ends, holidays and some evenings in the business, averaging about 20 hours per week. Kraemer's function was to keep the books

and handle correspondence, and he also did carpentry and construction work and assisted Mahoney in preparation of the chemicals. Tully testified that the reasonable value of Kraemer's service to Nitroform was $16 for an eight-hour day.

Petitioner testified, in answer to a question as to whether decedent was employed at Nitroform, "He was an officer, yes." To the question, "How long was he employed with the Nitroform Company, Incorporated, until his death?", the answer was, "Oh, well, as an officer from the time of its incorporation * * *."

Tully was the only other witness for petitioner. He offered no testimony concerning any agreement or understanding by the corporation with decedent as to what work or services the latter was to perform for the respondent, or as to what the times or hours of any service were to be. He did not know whether any records were kept as to the hours spent by any of the men at the company. He did testify to what decedent did do, as noted above, but not as to any undertaking or commitment by decedent with the respondent, or, indeed, with anyone, to do anything in particular.

As to compensation, Tully testified:

"A. Well, we agreed that we would not draw salaries or wages from the company for the time being. We would leave the money in the company as working capital, but we also agreed that we would all be paid a reasonable wage for our work that we did for the company."

The testimony was that the "agreement" was made between "the men who formed the corporation—the four incorporators" and that it was "observed by all * * * the four incorporators." "The four men who made the agreement had made that agreement verbally." The terms of the agreement were amplified by Tully on cross-examination: "we had agreed that when we had determined that we had enough capital in the organization, to use a working capital, that we would pay for the work that everybody had done"; also that if and when any of the men began to work full time for the company, he would be paid a salary. He also conceded that

the essential purpose in starting the business was so that all of the incorporators might eventually make their living there on a full time basis.

Tully said that at the time of decedent's death, no determination had been made as to whether there was sufficient money above needed working capital to pay the accrued obligations allegedly owing to Kraemer and Mahoney. But he did testify that there was enough money available at the time of the explosion to pay a reasonable wage to the men. It was not indicated whether or not this could have been done, still leaving the company sufficient funds with which to continue as working capital. Not by way of evidence here, but solely as comment, we refer to the finding in the *Mahoney* case that there was less than $1,100 of corporate funds in the bank when the accident occurred, and that upon the basis of hours of work allegedly performed by Mahoney and Kraemer since incorporation the accrued value thereof was approximately $2,500.

As indicated in our opinion in the *Mahoney* case, the authorities require a showing, for recovery of compensation as an employee under the elective compensation schedules of the act, of a valid contract of employment for a "financial consideration" between the purported employer, as "master" and employee as "servant." In such employment there is subsumed the essential element of control by the asserted employer over the work and the manner of its performance by the alleged employee. Giving all due weight to the findings in the Division and in the County Court, the testimony adduced here fails satisfactorily to establish any of the stated criteria.

(1) We find no agreement between respondent and decedent at all. There was, if Tully is to be believed at all as to the asserted arrangement concerning accruals of compensation, only an understanding between the four incorporators personally. Tully so stated several times. These men were in substance operating as autonomous members of a joint venture or partnership, notwithstanding they had assumed a thin cloak of corporate organization. Workmen's compensa-

tion to persons in such a relationship is foreign to the underlying purpose, as well as repugnant to the letter of the act. The form will not shield the substance from our eyes.

■ (2) The "contract" was not valid because it was not sufficiently definite in its terms as to the undertakings of both parties. Assuming sufficient definiteness as to the corporation's obligation (if any) to decedent, there is no indication that decedent *undertook* or committed himself to the rendition of any particular services at any fixed or determinable times for respondent.

(3) Decedent was under the control and direction of no one but himself, subject only to the continuing accord of the associates in the venture.

(4) Decedent's compensation was contingent upon an event which might never take place, *i. e.*, a determination by the four incorporators that there were sufficient funds in the treasury to pay accrued compensation at reasonable rates and leave enough money for working capital. We do not conceive that this is the kind of "service for another for financial consideration" envisaged in the act as the basic fabric of a compensable employment status. *N. J. S. A.* 34 :15–36.

The legal bases for the aforestated conclusions are set forth in the *Mahoney* case, cited *supra*.

■ Petitioner has not sustained her burden of establishing an essential element of her case, the existence of the employment relationship. The judgment under appeal is consequently

Reversed, but without costs.